R. William Potter
Peter D. Dickson
POTTER AND DICKSON
194 Nassau Street, Suite 31
Princeton, NJ 08542-7003
Phone: (609) 921-9555
Fax: (609) 921-2181
Email: rwppddlaw@cs.com
and potterrex@cs.com
Attorneys for the Plaintiffs

## THE UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY
## TRENTON VICINAGE

| | |
|---|---|
| BRRAM, Inc., a corporation organized under the laws of the Commonwealth of Pennsylvania; and Holly Bussey; William Lynch; and Richard DeLello; Individually,<br><br>Plaintiffs,<br><br>v.<br><br>United States Federal Aviation Administration (FAA), the Mercer County Board of Chosen Freeholders, and Allegiant Air LLC,<br><br>Defendants. | : Civil action number<br>:<br>: _____<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:     COMPLAINT<br>:<br>:<br>:<br>:<br>: |

## A. THE PARTIES

1. Plaintiff BRRAM, Inc., is a not-for-profit corporation organized

under the laws of the Commonwealth of Pennsylvania, headquartered at 25 South Main Street, Suite # 208, in Yardley, PA 19067.

2. Individual plaintiff Holly Bussey is the current President of BRRAM and a resident of 20 Knoll Drive in Yardley, Bucks County, Pennsylvania, 19067. Her residence lies beneath the flight path of many of defendant Allegiant Airlines' intended or actual flights into and out of TTN as well as Frontier Airlines' flights from and into TTN.

3. Individual plaintiff William Lynch is the Treasurer of BRRAM, Inc., with his principal place of business at 19 South Main Street in Yardley, PA 19067, also beneath the flight path of Allegiant and Frontier Airlines' flights originating and ending in TTN. Mr. Lynch resides in Wrightstown Township, Bucks County, PA.

4. Individual plaintiff Richard DeLello is a resident of Bucks County at 1315 Albright Drive, Yardley, PA 19067. His residence lies beneath the flight path of many of Allegiant's and Frontier Airlines' flights from and into TTN.

5. Defendant Federal Aviation Administration (FAA) of the United States Department of Transportation (DOT) is an executive agency of the

Government of the United States, with its headquarters at 800 Independence Avenue, S.W., in Washington, DC 20591, with the responsible regional office at the Office of the Regional Administrator, Eastern Region, 600 Old Country Road, Suite 446, Garden City, NY 11530.

6. Defendant Mercer County Board of Chosen Freeholders is the governing body of Mercer County in the State of New Jersey and is the owner and operator of the Trenton Mercer Airport ("TTN") located in West Trenton, Ewing Township, NJ 08628. The offices of the Freeholders are in the McDade Administration Building at 640 S. Broad Street in Trenton, New Jersey 08611.

7. Defendant Allegiant Air LLC (Allegiant), is a foreign for-profit corporation registered to do business in New Jersey and intending to operate as a common carrier at TTN. Its main business address is 1201 N. Town Center Drive, Las Vegas, NV 89144, and its registered agent for service of process in New Jersey is Corporation Service Company at 830 Bear Tavern Road, West Trenton, NJ 08628.

B. SUMMARY OF COMPLAINT:

8. This is an action for declaratory and injunctive relief against the United States Federal Aviation Administration (FAA) for its failure to perform the comprehensive and cumulative environmental impact analysis mandated by the "National Environmental Policy Act" (NEPA) through the preparation of a cumulative Environmental Impact Statement (EIS) of the cumulative environmental and safety impacts of Allegiant's and Frontier's passenger jet service at TTN, located in Ewing Township, Mercer County, New Jersey.

9. The Plaintiffs seek a judicial order compelling the FAA to comply with NEPA by promptly commencing the EIS cumulative impacts review by enjoining any operation of Allegiant at the TTN until such time as a cumulative EIS is prepared, published, subjected to public hearing and comment, and duly adopted, with emphasis on noise and air pollution impacts, and needed mitigation measures.

C. JURISDICTION:

10. Provided the FAA has not publicly issued an Order approving of Allegiant operations at TTN, this Court has subject matter jurisdiction of the complaint and jurisdiction of the parties to this action. Plaintiffs have

not been able, despite repeated and diligent efforts, to obtain any such FAA order approving of Allegiant's publicly announced plans to operate at TTN. In the event of any such FAA order that has been publicly issued, petitioners have also filed simultaneously a petition for review of any such order in the Third Circuit Court of Appeals.

11. This action is brought before this court pursuant to the laws of the United States, specifically section 102 (C) (2) of the National Environmental Policy Act of 1969 (NEPA), 42 U.S.C.A. § 4321, et seq.; the implementing regulations of the FAA, 14 C.F.R. § 150, et seq.; the regulations of the United States Council on Environmental Quality (CEQ), 40 C.F.R. § 1500 , et seq.; and section 5 of the United States Administrative Procedure Act (APA)), 5 U.S.C.A. § 701, et seq. This court has subject matter jurisdiction pursuant to 28 U.S.C.A. § 1331.

D. VENUE:

12. Because all of the defendants reside within or regularly conduct business within the State of New Jersey, venue is proper in the United States District Court of New Jersey, located in Trenton.

E. FACTUAL ALLEGATIONS:

13. Since at least 1999 various of the plaintiffs, individually and collectively, together with many others, have been actively urging the FAA to prepare an Environmental Impact Statement ("EIS") regarding planned expansion of operations of commercial passenger jet service into and out of TTN, primarily due to the offensive noise and vibration impacts caused by such commercial airline service.

14. In November 1999 the FAA sponsored "scoping sessions" to assist in determining the proper scope of environmental impact and safety reviews of recently announced TTN plans for expansion and enhancement of the airline terminal which was expressly intended for the purpose of attracting a low-fare/high-frequency (LF/HF) commercial airline.

15. At that time the LF/HF was intended to be Southwest Airlines.

16. Subsequently the FAA caused to be published a draft environmental assessment (DEA) which was the subject of a public hearing on June 12, 2002 in Trenton, at which plaintiff BRRAM members or representatives testified or submitted written comments critical of the limited scope of the DEA and calling for preparation of a complete EIS prior to the commencement of LF/HF service by Southwest or by any other

air line.

17. On or about February 23, 2006 (published on April 7, 2006) the Regional Administrator of the FAA released a "Record of Decision" (ROD) inclusive of a "Finding of No Significant Environmental Impact" (FONSI) to explain the FAA decision to adopt the DEA, as amended, and not to prepare an EIS.

18. In response to issuance of the ROD/FONSI, plaintiffs BRRAM and Lynch, joined by Bucks' residents and the elected Board of Supervisors of the Township of Lower Makefield in Bucks County, PA, filed a formal "Petition for Review" in the United States Court of Appeals for the Third Circuit, captioned "Board of Supervisors of Lower Makefield Township, et al. Petitioners v. Federal Aviation Administration Respondent."

19. Following a period of court-ordered mediation, the FAA on or about June 9, 2008 issued a decision captioned "Order Withdrawing Finding of No Significant Impact/Record of Decision dated February 23, 2006 for the Trenton Mercer Airport" (Withdrawal Order).

20. In the Withdrawal Order, the FAA concluded that there was a

"change of circumstances" in that the project sponsor, Mercer County, had withdrawn its original plans to expand the TTN terminal and attendant facilities (the subject of the DEA) because Mercer County no longer sought to attract an LF/HF commercial air carrier, such as a Southwest Airlines and, as a result, there was no need to expand or enhance the TTN airport terminal or related facilities.

21. The Withdrawal Order expressed its position that no EIS was made necessary at that time because "to FAA's knowledge no other large commercial air carrier has expressed interest to enter this market," referring to TTN, and thus there was no "major federal action significantly affecting the environment" which would trigger further compliance with the National Environmental Policy Act ("NEPA"), 42 U.S.C.A. § 4321, et seq., and the regulations of the FAA. 14 C.F.R. § 150 et seq., through preparation of an EIS.

22. The Withdrawal Order characterized a LF/HF air carrier "as an air carrier with operations similar to those of Southwest Airlines; specifically, section 1.5.2 of the DEA defines a LF/HF air carrier operation as a commercial air carrier characterized by offering low fares with a high

frequency of flights to popular business and leisure destinations."

23. The Withdrawal Order explained that "if the airport sponsor [Mercer County] desired to pursue other projects for any purpose in the future, appropriate environment review and full documentation would be required" to obtain FAA approval.

24. The Withdrawal Order added that "based on my consideration of the substantial new information that changed circumstances concerning the purpose and need for the replacement terminal project discussed above as well as my consideration of FAA orders cited above, withdrawing the February 23, 2006 FONSI/ROD ... Should the airport sponsor wish to proceed with any component of the project approved in the now withdrawn ROD, the sponsor must seek FAA approval for that component."

25. Most importantly, the Order stated that if Mercer County attracted a LF/HF air carrier, this action "would likely cause sufficient noise impacts that would require the preparation of an environmental impact statement (EIS)." However, the Withdrawal Order said because "to date, no LF/HF air carrier is operating at TTN and, to the FAA's knowledge, no LF/HF air carrier has recently expressed interest in

starting operations at TTN," no EIS was needed in order to satisfy NEPA requirements.

26. "Finally," the Withdrawal Order stated, "an Environmental Assessment [EA] remains valid for 3 years in the absence of major steps to implement a project. Therefore in approximately 9 months ... [by February 9, 2010] the TTN EA would need to be reevaluated, at the very least to ensure that environmental analyses are accurate, valid, adequate, and current."

27. To date, on information and belief, no such reevaluation of the TTN EA has been performed or even commenced.

28. Since issuance of the Withdrawal Order on June 9, 2008, Mercer County has succeeded in attracting two LF/HF air carriers: Frontier Airlines and more recently, Allegiant Airlines (Allegiant) which, on information and belief, has plans to rapidly expand operations and become a competitor in the provision of LF/HF service at TTN.

29. Mercer County has embarked upon a federally-assisted series of capital improvement programs which have facilitated Frontier Airlines' and now Allegiant's decisions to locate and expand operations at TTN.

30. The LF/HF operations of Frontier Airlines, combined with the operations of Allegiant have caused, are causing, and will continue to cause "sufficient noise impacts that would require the preparation of an environmental impact statement," as the FAA projected they would in the FAA's Withdrawal Order of June 9, 2009. However, the FAA has not commenced any environmental or safety analysis of the impacts of Frontier's expanded LF/HF operations, nor of Allegiant's plans to expand into a competitor LF/HF at TTN.

31. The combined operations and cumulative effects of Frontier Airlines' and Allegiant's operations at TTN constitute the equivalent of a Southwest Airlines LF/HF with attendant increased noise, vibration and other environmental impacts substantially affecting the human and natural environment, including extensive noise caused during takeoffs and landings over and above the Plaintiffs' homes, businesses, schools, and recreation areas that lie within the flight path into and out of TTN.

32. Allegiant has announced plans to locate extensive operations at TTN in direct competition with Frontier.

33. The FAA has provided substantial federal funding for various

capital improvement projects at TTN for the purpose of facilitating LF/HF commercial operations by Frontier and by Allegiant, thereby "federalizing" these projects.

34. Among these FAA-financed projects at TTN intended to facilitate LF/HF operations at TTN are the following:

– a. $880,000 for the purchase of an emergency response vehicle;

– b. $8,550,000 for the construction of a parallel taxiway;

– c. $427,500 for the construction of a connector taxiway to the terminal apron and associated lighting;

– d. $665,000 for improvement to a connector taxiway and associated lighting to complete a full parallel taxiway;

– e. $6,650,000 to complete a full parallel taxiway for the north side of the TTN terminal.

35. Frontier Airlines has continued to expand operations and has provided service to the following cities from TTN: Atlanta, Charlotte, Chicago, Cleveland, Detroit, Fort Lauderdale, Fort Myers, Indianapolis, Minneapolis/St. Paul, Nashville, Orlando, Raleigh/Durham, St. Augustine/Jacksonville, St. Louis, and West Palm Beach, among others.

36. On or about July 29, 2016 there appeared in news media reports that Allegiant would soon establish a substantial presence at TTN for the express purpose of providing head to head direct LF/HF competition with Frontier.

37. In response to these public media articles, plaintiffs promptly endeavored to obtain a copy of any FAA environmental or safety reviews, including specifically any Ops Specs amendment or "Categorical Exclusion" determination of exemption from NEPA. These efforts included (a) diligent reviews of the FAA website which, in fact, does not list any Ops Specs amendments; (b) requests made to the United States Attorney's office in Trenton, which directed plaintiffs to file a Freedom of Information Act (FOIA) request; (c) the FAA has not responded to telephone calls and messages from plaintiffs' counsel seeking any appropriate documentation, including any final order approving Allegiant's operations at TTN; (d) a FOIA request of the FAA; and (e) the FAA response which was sent from the Pacific/Las Vegas regional office of the FAA, to which the FOIA request had been routed, stating that the FAA could not locate any report, document or correspondence of any kind regarding Allegiant's plans or

Ops Specs for TTN. Therefore, it appears that no final order approving Allegiant's operations at TTN has been sought or granted or will be issued.

38. Individually and collectively, the plaintiffs are suffering and will suffer significant injury in fact due to the cumulative environmental impacts of current and expanded combined operations of Frontier and Allegiant airlines at TTN which include or will include noise and pollution from multiple, daily takeoffs and landings, early morning and late night, in the direction of, at low altitude over and above numerous Bucks County homes, businesses, schools, parks, government facilities and other public facilities, which are located only a few miles away from TTN across the Delaware River, thereby causing excessive and substantial noise and other pollution. Therefore, Plaintiffs have standing to sue.

F . ALLEGATIONS OF LAW:

**The FAA must comply with NEPA by performing and issuing a comprehensive, cumulative impact analysis of the combined impacts of Frontier Airlines' operations at TTN and Allegiant's anticipated and actual operations at TTN**

Page 14 of  19

39. The plaintiffs incorporate by reference the allegations of paragraphs 1 through 38 as if set forth verbatim herein.

40. The FAA agrees that FAA approval of an amendment to a commercial airliner's Ops Specs is a "major Federal action," which determination triggers the commencement of an Environmental Assessment (EA) and NEPA compliance.

41. The term "major Federal action is defined by the Council on Environmental Quality ("CEQ") as " actions with effects that may be major and which are potentially subject to federal control and responsibility. Major reinforces but does not have a meaning independent of significantly (section 1508.27)...." 40 C.F.R. § 1508.18.

42. The CEQ regulations further clarify that "federal actions tend to fall within one of the following categories: ... (4) approval of specific projects, such as construction or management activities located in a defined geographic area. Projects include actions approved by permit or other regulatory decision as well as Federal and federally assisted activities." 40 C.F.R. § 1508.18 (b) (4)

43. "'Significantly' as used in NEPA requires consideration of both

context and intensity," including "(a) context. This means that the significance of an action must be analyzed in several contexts such as society as a whole (human, national), affected region, the affected interest, and the locality. Significance varies with the setting of the proposed action for instance, in the case of a site specific action, significance would usually depend upon the effects in the locale rather than the world as a whole. Both short and long term effects are relevant." 40 C.F.R. § 1508.27 (a).

44. "Intensity" includes:

> (1) impacts that may be both beneficial and adverse. A significant effect may exist even if the Federal agency believes that on balance the effect will be beneficial.
> ....
> (4) the degree to which the effects on the quality of the human environment are likely to be controversial.
> ....
> (7) whether the action is related to other actions with individually insignificant but *cumulatively* significant impacts. Significance exists if it is reasonable to anticipate a *cumulatively* significant impact on the environment. Significance cannot be avoided by terming an action temporary or by breaking it down into small component parts....
> [40 C.F.R. § 1508.27, Ital added.]

45. Accordingly, a major Federal action which significantly affects

the human environment requires the FAA, as the lead federal agency, promptly to comply with the NEPA by commencing the cumulative environmental analysis process which concludes with the preparation of an EIS .

46. The FAA failed to comply with NEPA and its own NEPA regulations by arbitrarily and capriciously failing to prepare an EIS of the cumulative impacts of Frontier's LF/HF when combined with the planned LF/HF operations of Allegiant also using TTN.

G. JUDICIAL RELIEF / REMEDIES:

WHEREFORE, plaintiffs petition this Honorable Court to issue an Order:

1. Enjoining Allegiant Airlines from any service at TTN until such time as the FAA has prepared, or caused to be prepared an Environmental Assessment (EA) which, by the FAA's own previous admission, will result in the preparation of an Environmental Impact Statement (EIS) pursuant to the requirements of NEPA and implementing regulations.

2. Compelling the FAA to prepare or cause to be prepared an EA which examines the cumulative impacts of two LF/HF commercial carriers

Page 17 of  19

at TTN and which will result in an EIS to address the full range of environmental impacts, including, inter alia, noise and community disruption and potential mitigation measures resulting from or caused by Frontier and Allegiant's combined use of TTN at current and anticipated levels of service.

3. Retaining jurisdiction of the case to ensure compliance.

4. Such other relief or remedies as may be Just and Equitable under the circumstances.

Date  10-5-16

Respectfully submitted,

POTTER AND DICKSON

By  R. William Potter

R. William Potter
194 Nassau Street, Suite 31
Princeton, NJ 08542-7003
Email: rwppddlaw@cs.com, potterrex@cs.com
Telephone: (609) 921-9555;
Fax: (609) 921-2181

CERTIFICATION

I hereby certify that the matter in controversy is related to the following matters:

The Petition for Review filed simultaneously in the United States

Court of Appeals for the Third Circuit entitled, Bucks Residents for Responsible Airport Management, Inc., Holly Bussey, William G. Lynch, and Richard DeLello, Individually, v. Federal Aviation Administration, Respondent.

The pending appeal in the United States Court of Appeals for the Third Circuit entitled, BRRAM, Inc., a corporation organized under the laws of the Commonwealth of Pennsylvania, Ms. Holly Bussey, Mr. William Lynch, Mr. Richard Delello, Ms. Julie Power, Mr. John Giacobetti, Mrs. Jennifer Giacobetti, Ms. Deborah Leamann, Ms. Caroline Bondi, Ms. Delores Brienza, Mr. Richard Wayne, Plaintiffs/appellants, V. United States Federal Aviation Administration (FAA), Mercer County Board of Chosen Freeholders, and Frontier Airlines, Inc., Defendants/Appellees, Civil Action No. 15-2393.

Dated October 3, 2016.

R. William Potter
Attorney for the Plaintiffs

Page 19 of 19